JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Sheila Flores Berrios, In her own right and as Administrator for the Eastate of Barvina Berrios, Deceased.

## DEFENDANTS

Edward Sweeney
Warden Dale Meisel
Assistant Warden Janine Donate
---> Please see continuation sheet

**(b)** County of Residence of First Listed Plaintiff   Lehigh
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Lehigh
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Philip D. Lauer, Esquire; Joseph E. Welsh, Esquire
Lauer & Fulmer, P.C., 701 Washington Street, Easton , PA 18042
610.258.5329

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☐ 2   U.S. Government Defendant
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*   *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| Student Loans | ☐ 340 Marine | Injury Product | | ☐ 840 Trademark | Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | Medical Malpractice | | Leave Act | | Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | or Defendant) | Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | 26 USC 7609 | State Statutes |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 1983

Brief description of cause:
Constitutional claims regarding conditions of confinement - failure to provide medical care, and pendent state claims

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 150,000+

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE       DOCKET NUMBER

DATE
02/03/2015

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

**Shelia Flores Berrios v. Edward Sweeney, et al.**

Civil Cover Sheet Continuation

Additional Defendants:

Erik Von Keil, M.D.
John/Jane Doe Guards #1-X
John/Jane Doe Supervisors #1-X
John/Jane Doe Medical Staff #1-X
Primecare Medical, Inc.
The County of Lehigh

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: ___240 Lehigh Street, Allentown PA 18102___

Address of Defendant: ___38 North Fourth Street, Allentown PA 18101___

Place of Accident, Incident or Transaction: ___Lehigh County Jail, 38 North Fourth Street, Allentown PA 18101___
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))  Yes☐  No☑

Does this case involve multidistrict litigation possibilities?  Yes☐  No☑

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐✗ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, ___Philip D. Lauer, Esquire___, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: ___February 3, 2015___ _____ ___07935___
Attorney-at-Law  Attorney I.D.#

**NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.**

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: ___February 3, 2105___ _____ ___07935___
Attorney-at-Law  Attorney I.D.#

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Shelia Flores Berrios, Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Edward Sweeney, et al., Defendants | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   ( X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.   ( )

| | | |
|---|---|---|
| February 3, 2015 | Philip D. Lauer, Esquire | |
| **Date** | **Attorney-at-law** | **Attorney for Plaintiff** |
| 610.258.5329 | 610.258.0155 | phil@lauerlaw.net |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**SHEILA FLORES BERRIOS**        :
*In her own right and as Administrator*  :
*for the Estate of* **BARVINA BERRIOS,**  :
*Deceased.*                              :
**240 Lehigh Street**                 :
**Allentown PA  18102**            :
              **Plaintiff,**     :      **No.**
                              :

      **v.**                            :
                              :

**EDWARD SWEENEY,**           :
*Individually, and in his official capacity as* :
*Director of Corrections,*         :
**Lehigh  County D.O.C.**        :
**38 North Fourth Street**       :
**Allentown PA  18101,**        :
                              :

**WARDEN DALE MEISEL,**      :
*Individually, and in his official capacity as* :
*Warden of Lehigh County Jail,*  :
**Lehigh  County Jail**          :
**38 North Fourth Street**       :
**Allentown PA  18101,**        :
                              :

**ASSISTANT WARDEN**        :
**JANINE  DONATE,**          :
*Individually, and in her official capacity as* :
*Assistant Warden for Treatment,*  :
**Lehigh  County Jail**          :
**38 North Fourth Street**       :
**Allentown PA  18101,**        :
                              :

**ERIK VON KEIL, M.D.**       :
*Individually, and in his official capacity as* :
*Medical Director of Lehigh County Jail,*  :
**Lehigh  County Jail**          :
**38 North Fourth Street**       :

Allentown PA  18101,                          :
                                               :
**JOHN/JANE DOE GUARDS #1-X,**                 :
*Individually, and in their official*          :
*capacities as Corrections Officers,*          :
**Lehigh  County Jail**                        :
**38 North Fourth Street**                     :
Allentown PA  18101,                          :
                                               :
**JOHN/JANE DOE SUPERVISORS #1-X,** :
*Individually, and in their official*          :
*capacities as Jail supervisory personnel,*   :
**Lehigh  County Jail**                        :
**38 North Fourth Street**                     :
Allentown PA  18101,                          :
                                               :
**JOHN/JANE DOE**                              :
**MEDICAL STAFF #1-X,**                        :
*Individually, and in their official*          :
*capacities as Jail Medical Staff,*            :
**Lehigh  County Jail**                        :
**38 North Fourth Street**                     :
Allentown PA  18101,                          :
                                               :
**PRIMECARE MEDICAL, INC.,**                   :
**3940 Locust Lane**                           :
**Harrisburg PA  17109**                       :
                                               ;
    **and,**                :
                                               :
**THE COUNTY OF LEHIGH,**                      :
**17 S. Seventh Street**                       :
Allentown PA  18101,                          :
        **Defendants.**        :        **Jury Trial Demanded**


## COMPLAINT

NOW COMES the Plaintiff, Sheila Flores Berrios, in her own right and as Administrator for the Estate of Barvina Berrios, Deceased, by and through her legal counsel, Philip D. Lauer, Esquire, and Joseph E. Welsh, Esquire, LAUER & FULMER, P.C., and by way of Complaint against the Defendants named herein, does aver as follows:

## I.    JURISDICTION AND VENUE

1.    This action is instituted under the United States Constitution, particularly under the provisions of the Eighth and Fourteenth Amendments, and under federal law, particularly the Civil Rights Act of 1871 hereinafter referred to as the "Act", as amended, 42 U.S.C. §1983, *et seq*.

2.    This Court has jurisdiction in this matter pursuant to 28 U.S.C. §1331, §1343 and §1367, regarding the principles of pendent and supplemental jurisdiction over related state law claims.

3.    Venue in the Easern District is properly laid pursuant to 28 U.S.C. §1391, in so far as the alleged unlawful conduct complained of in this Complaint, which forms the factual and legal basis of the Plaintiff's claims, arose within the geographical limits of this District in general and, within the geographical limits of Allentown, Pennsylvania, in particular.

## II.   **THE PARTIES**

4.   Plaintiff Sheila Flores Berrios, is an adult individual, with a permanent residence of 240 Lehigh Street, Allentown, Pennsylvania. Plaintiff brings this action in her own right and as Administrator for the Estate of Barvina Berrios, Deceased (hereinafter "Barvina").

5.   Barvina died intestate. Letters of Administration were issued to Plaintiff by the Lehigh County Register of Wills on June 13, 2104.

6.   Defendant Edward Sweeney (hereinafter "Sweeney") is an adult individual who, at all times relevant hereto, was serving in his capacity as the Director of the Lehigh County Department of Corrections, 38 North Fourth Street, Allentown, Pennsylvania.

7.   Defendant Warden Dale Meisel (hereinafter "Meisel") is an adult individual who, at all times relevant hereto, was serving in his capacity as Warden at the Lehigh County Jail, 38 North Fourth Street, Allentown, Pennsylvania.

8.   Defendant Assistant Warden Janine Donate (hereinafter "Donate") is an adult individual who, at all times relevant hereto, was serving in her capacity as Assistant Warden for Treatment at the Lehigh County Jail, 38 North Fourth Street, Allentown, Pennsylvania.

9.   Defendant Erik Von Keil, M.D. (hereinafter "Von Keil") is an adult individual who, at all times relevant hereto, was  serving in his capacity as

4

Medical Director at the Lehigh County Jail, 38 North Fourth Street, Allentown, Pennsylvania. At all times relevant hereto, Dr. Von Keil was a licensed professional with offices in Lehigh County, Pennsylvania. Plaintiff is, *inter alia*, asserting a professional liability claim against this Defendant.

10.    Defendants John/Jane Doe Guards #1-X are individuals, whose exact identities and number are unknown to Plaintiff prior to conducting discovery, who, at all times relevant hereto, were employed as Corrections Officers at the Lehigh County Jail, 38 North Fourth Street, Allentown, Pennsylvania.

11.    Defendants John/Jane Doe Supervisors #1-X are individuals, whose exact identities and number are unknown to Plaintiff prior to conducting discovery, who, at all times relevant hereto, were employed in a supervisory capacity at the Lehigh County Jail, 38 North Fourth Street, Allentown, Pennsylvania.

12.    Defendants John/Jane Doe Medical Staff #1-X are individuals, whose exact identities and number are unknown to Plaintiff prior to conducting discovery, who, at all times relevant hereto, were employed as medical staff members at the Lehigh County Jail, 38 North Fourth Street, Allentown, Pennsylvania. Plaintiff believes, and thus avers that some or all of the said John/Jane Does are licensed professionals with offices in Lehigh County,

Pennsylvania. Plaintiff is asserting, *inter alia*, professional liability claims against those licensed professionals.

13. Defendant Primecare Medical, Inc. (hereinafter "Primecare") is a for-profit business corporation, organized and existing under the laws of the Commonwealth of Pennsylvania, with a registered address of 3940 Locust Lane, Harrisburg, Pennsylvania. At all times relevant hereto Defendant Primecare acted in concert with Lehigh County in providing, or failing to provide, medical care to the inmates of Lehigh County Jail.

14. Defendant County of Lehigh (hereinafter "Lehigh") is a county, organized and existing under the laws of the Commonwealth of Pennsylvania, operating pursuant to the provisions of a duly adopted Home Rule Charter, with a business address of 17 S. Seventh Street, Allentown, Pennsylvania.

15. Defendants Sweeney, Meisel, Donate, Von Keil and John/Jane Does (hereinafter sometimes referred to as "Individual Defendants") were entrusted to protect the Constitutional and legal rights of those given to their care, custody and control, including Barvina, and at all times relevant hereto, were acting under the authority and color of law, and acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions, or acted independently.

16. Defendant Lehigh County was responsible, *inter alia*, for the operation of

the Lehigh County Jail, 38 North Fourth Street, Allentown, Pennsylvania, including providing medical care for inmates, and pre-trial detainees, such as Barvina, consistent with the requirements of the Eighth and Fourteenth Amendments to the United States Constitution, and Pennsylvania law.

17.   At all times relevant hereto Defendant Primecare was under contract with Lehigh County to provide medical care for the inmates at the Lehigh County Jail.   Plaintiff believes, and thus avers, that Defendants Von Keil and John/Jane Doe Medical Staff were employed by Defendant Primecare, and acting under the supervision, control and authority of Lehigh County.

## III.   FACTS (Pre-Discovery)

18.   On February 4, 2013 Barvina was arraigned on several charges related to a traffic altercation with another motorist known to Barvina.  Unable to post bail, she was committed to Lehigh County Jail.

19.   At the time of her commitment, Barvina was suffering from several chronic conditions, including asthma, diabetes, and a bi-polar disorder.  Barvina was also on a methadone program, having successfully defeated a childhood drug dependency, by faithfully staying on the program for approximately the past thirty (30) years.

20.   Upon information and belief, on or about February 4, 2013 Barvina was

examined by one or more John/Jane Doe Medical Staff as well as Defendant Von Kiel.

21.  On or about February 4, 2013, Defendant Von Kiel prescribed a regime of pharmaceutical treatments for Barvina's various illnesses including, *inter alia*, subcutaneous injections four times per day to produce a small blood sample for blood glucose level monitoring, and subcutaneous injections of insulin via syringe twice per day.

22.  It is believed, and thus averred, the blood glucose monitoring and insulin injections which Barvina obtained were performed by John/Jane Doe Medical Staff. As such, Barvina's physical condition would have been observed by such staff members at least four times per day.

23.  Within several days Barvina developed a serious medical condition, including experiencing severe chest pains and coughing up blood.

24.  Barvina repeatedly requested medical treatment, but her requests were refused by prison personnel, including, *inter alia*, John/Jane Doe Guards, Supervisors, and Medical Staff.

25.  On or about February 7, 2014 Barvina visited with family members and appeared to be in worsening health, complaining of chest pains and coughing up blood.

26.  During the said family visit, Plaintiff observed that her mother, Barvina, had

dried blood around her mouth, that she was limping, and that her vision had deteriorated such that it was difficult for her to read the information to use the telephone communication system for the visit.

27. On or about February 11, 2013, Barvina appeared in court for a preliminary hearing. She had to be transported in a wheelchair, and was barely able to speak above a whisper. Barvina's family, including Plaintiff observed that her condition had become even more serious since their last visit, and that she was critically ill.

28. Plaintiff, and other members of Barvina's family, repeatedly questioned Lehigh County Jail personnel about the need for Barvina to receive urgent medical care, but their concerns fell upon deaf ears.

29. The emergency medical needs of Barvina were so obvious, and the severity of her condition so clear, that even individuals without any medical training would know, or should have known, that she required immediate emergency medical intervention.

30. During her confinement, and as her condition rapidly and obviously critically deteriorated, Barvina's condition and her cries for help were observed by other inmates who alerted prison personnel, including John/Jane Doe Guards and Supervisors.

31. Rather than summon appropriate medical treatment, the John/Jane Doe

Guards and/or Supervisors placed Barvina in solitary confinement, so that she would not disturb the other inmates.

32. On or about February 14, 2013, Barvina's family was able to post bail and Barvina was released from Lehigh County Jail at approximately 1 p.m. on that date.

33. At all times during which Barvina was incarcerated at Lehigh County Jail, she had not been convicted of any crime, and was in pre-trial detention, awaiting the posting of sufficient bail for her release.

34. The bail bond person noted that Barvina looked extremely ill and in grave condition when he saw her on February 14, 2013, and recommended that Barvina be immediately taken to the hospital.

35. Upon her release, Barvina had blood coming out of her mouth, and was in intense pain.

36. Despite Barvina's urgent medical crisis, Lehigh County Jail officials delayed her release for 3 hours after the necessary paperwork and bail had been furnished to them.

37. Barvina's family members saw her urgent and deteriorated condition, and, immediately upon her release, transported her to Allentown Sacred Heart Hospital ("ASH").

38. Barvina related to her family members, including the Plaintiff, the horrific

10

treatment and lack of medical care which she had received, or more correctly *not* received, during the time in which her physical condition rapidly deteriorated while under the care, custody and control of the Defendants.

39.  Upon her admission to ASH on the afternoon of February 14, 2013, Barvina was diagnosed with pneumonia, fever, and septic shock.

40.  Despite the heroic efforts of the doctors and staff of ASH, Barvina died at 8:37 p.m. of February 15, 2013, one day after her release from Lehigh County Jail.

41.  Barvina's primary cause of death was determined to be Septic Shock, which had been present for approximately 25 hours, and Pneumonia which had been present for approximately 5 days. Other significant factors which led to her death were oliguric renal failure which had progressed to anuria, hypotension, and diabetes mellitus.

42.  Plaintiff believes, and thus avers, that, had Barvina received medical care which met the standard of care normally provided patients under similar circumstances, she would not have experienced the horrible deterioration of her condition, with attendant physical and psychological pain and suffering, and her ultimate rapid and untimely demise.

43.  It is beneath the nationally recognized standards for the care of pre-trial detainees, such as Barvina, to provide such substandard medical care as to

11

allow an inmate to literally rot in her cell, as happened with Barvina.

44.    Defendants Lehigh County, Primecare, Sweeney, Meisel, Donate and Von Keil have a history of failing to address the medical needs of inmates at the Lehigh County Jail, including the following in-custody deaths proximate Barvina's death:

a.    On August 17, 2011, 32 year old Tyquann McCord died from what was described to be natural causes;

b.    In October, 2011, 25 year old David Campbell died after having been placed in a restrain chair while in obvious physical distress, and denied medical treatment;

c.    On January 1, 2012, 25 year old Andrew Czonska committed suicide while in a cell with no cellmate and no monitoring;

d.    On January 5, 2012, 27 year old Travis Magditch, an asthmatic like Barvina, died from an asthma attack in his cell, after his repeated cries for help went unanswered, and after officials had made a prior determination that he would not be provided with a rescue inhaler, despite holding a prescription for such an inhaler;

e.    On February 27, 2013, 39 year old Alphie Herrera died from being placed in a restraint chair while suffering an epileptic seizure.  A subsequent investigation by Lehigh County, believed to have been

conducted by one or more of the individual Defendants, determined that no remedial action was warranted; and

f.      On January 16, 2014, 30 year old Frank Reichl-Pritchard died from self-inflicted injuries while in a cell with no cellmate and no monitoring of his condition.

45.   Defendant Lehigh County also has a long and notorious history of violating the federal and state Constitutional rights of those in its care, custody and control, generally, including, *inter alia*,:

a.      In 1992 entering into a federal consent decree which mandated, *inter alia*, the construction of an entirely new jail facility, after lengthy litigation with a group of inmates over conditions of confinement; and

b.      Upon information and belief, being placed under the control of the Pennsylvania Department of Corrections because of numerous serious and repeated violations of national standards in their operation of the Lehigh County Jail.

46.   The selection and retention of Primecare by Lehigh County was based solely upon financial consideration, without regard to the quality of care, or lack thereof, which was provided to inmates.

47.   It was the custom, policy and procedure of Defendant Lehigh County to reduce costs at the expense of adequate medical care for those in its care,

13

custody and control at Lehigh County Jail.

48.    Had Defendant Lehigh County had in place an effective policy of ensuring adequate medical care for inmates, Barvina would have not suffered her horrible and tragic demise.

49.    Defendant Von Keil has a well know history of failing to provide adequate medical care to inmates, including, *inter alia,* numerous other instances of deaths occurring at Lehigh County Jail, as more fully detailed herein.

50.    Defendant Von Keil, on November 18, 2013, seven months after being responsible for the medical care of Barvina, drafted a letter, as part of a scheme to collect Social Security Disability benefits, stating that he suffered from Post Traumatic Stress Disorder ("PTSD"), that he had suffered from PTSD for seven years, and that in the past "several months" it had deteriorated rapidly rendering him unable to properly care for patients.

51.    Defendant Doctor Von Kiel's assertions in said letter, if true, would mean that, at the time he was responsible for the care of Barvina, he had been suffering from chronic PTSD, it was worsening, and either had, or was on the verge of rendering him incapable of practicing medicine.

52.    Defendant Von Kiel is currently under indictment regarding his application for Social Security Disability benefits, as well as federal income tax evasion.

53.    From as early as June, 2007 Primecare was served with garnishments upon

Von Keil's wages seeking to recover upon defaulted student loans in excess of $175,000.   Federal litigation ensued and Defendant Primecare was ordered to withhold twenty-five percent of Von Keil's net wages.

54.   Von Keil subsequently filed for bankruptcy protection to prevent Primecare from garnishing his wages.

55.   By virtue of the repeated garnishment orders and subsequent litigation, in conjunction with the clear instances of neglect of patient care at Lehigh County Jail, Primecare, and Lehigh County, knew or should have known, that Doctor Von Keil's fitness to practice medicine was called into question.

56.   Despite this knowledge, Defendant Primecare, and Defendant Lehigh County, continued to allow their employee Doctor Von Keil to provide medical care, and supervise medical staff who provided care, to inmates at Lehigh County Jail, including Barvina.

57.   During Barvina's incarceration at Lehigh County Jail, Defendant Donate served as Assistant Warden for Treatment, and, as such was responsible for the care of inmates at the Jail.

58.   Prior to being hired as Assistant Warden by Lehigh County, Defendant Donate had served as Warden for the Lackawanna County Prison, in Scranton, Pennsylvania.

59.   During her tenure as Warden at Lackawanna, numerous prison guards

assaulted, both physically and sexually, inmates in Warden Donate's care, custody, and control.

60.   Warden Donate notoriously did little or nothing to discipline the staff under her control, and, rather, condoned and ratified their unlawful activities.

61.   In numerous instances, Father William Pickard, Catholic Chaplain at the Prison, alerted prison officials, including then Warden Donate, as well as the Lackawanna County Commissioners, of assaults and threatened assaults upon inmates.

62.   In one specific instance, Father Pickard informed the Supervisors in writing that one inmate was being neglected and in serious danger of attack.

63.   Shortly thereafter the inmate, Nicholas Pinto, suffered a horrific beating at the hands of fellow inmates, while prison guards observed.

64.   Warden Donate's response was to ban Father Pickard from the prison, on the allegation that he pushed a prison guard while ministering to Mr. Pinto at a local hospital.

65.   Warden Donate was eventually asked to leave her position with Lackawanna County.

66.   The unlawful events which occurred at Lackawanna County Prison were well known to the public, and received extensive coverage in the news media.

67. Despite Defendant Donate's history in Lackawanna County Prison, she was hired by Lehigh County to be Assistant Warden for Treatment.

68. Sometime after Barvina's death, Defendant Donate was promoted to Warden of Lehigh County Jail, a position which she holds presently.

69. At all times relevant hereto Defendant Lehigh County, through its employees and agents were aware of the factual basis for the claims raised herein.

70. At all times during the events described above, the individual Defendants were engaged in a joint venture. The individual Defendants assisted each other in the performing of the various actions described, and lent their physical presence, support, and/or the authority of their office to each other during the said events.

71. As a direct and proximate result of the said acts or omissions of the individual Defendants, the Plaintiff and/or Barvina suffered, *inter alia*, the following injuries and damages:

   a. physical and mental pain and suffering, in both the past and the predictable future, including damages for physical pain, discomfort, loss of use of bodily function, disfigurement, ill health, and emotional injuries including stigma, humiliation, fright and emotional trauma eventually resulting in her death;

17

b.   medical expenses;

c.   loss of life;

d.   impairment of personal earning capacity, and shortening of economic horizons;

e.   general damages for violation of Plaintiff's constitutional rights under the Eighth or Fourteenth Amendment to the United States Constitution; and

f.   punitive damages (except as to the municipal Defendant and the individual Defendants employed by the municipal Defendant, in their official capacites), which are justified factually and legally because Defendants acted maliciously and/or wantonly in violating the Plaintiff's constitutionally and statutorily protected rights, and did so intentionally, recklessly and willfully while engaging in reprehensible and outrageous conduct not to be tolerated in a civilized society.

72.   The actions of the Defendants violated the clearly established and well-settled federal Constitutional rights of the Plaintiff as more clearly set forth in the Counts below.

18

## COUNT I
### Section 1983 - Constitutional Violations
### Against All Defendants

73. The preceding paragraphs are incorporated herein by reference as though fully set forth.

74. The conduct of the individual Defendants, or one or more of them, was willful, reckless, grossly negligent and deliberately indifferent to the bodily integrity and the physical and psychic safety of Barvina.

75. This conduct constitutes a violation of the Eighth and Fourteenth Amendments to the United States Constitution, including, *inter alia*, Barvina's rights to bodily integrity, freedom from unreasonable searches and seizures, freedom from cruel and unusual conditions of confinement, freedom from state created dangers, and freedom from arbitrary conduct of governmental actors which shock the conscience.

76. As a direct and proximate result, Barvina was injured as stated more fully herein.

## COUNT II
### Section 1983 - Denial of Medical Care
### Against Defendants Sweeney, Meisel, Donate, Von Keil, John/Jane Doe Guards #1-X, John/Jane Doe Supervisors #1-X, John/Jane Doe Medical Staff #1-X, all in their individual capacities, and Primecare.

77. The preceding paragraphs are incorporated herein by reference as though

fully set forth.

78.   After falling ill exhibiting obvious medical symptoms, capable of detection by medical as well as lay personnel, as more fully described hereinabove, Barvina had serious medical needs.

79.   The said medical needs of Barvina were growing increasingly serious, and should have been obvious to each of the other named Defendants.

80.   The Defendants' deliberate indifference to those serious, and utterly apparent medical needs, were a proximate cause of Barvina's worsening condition and ultimately her painful and excruciating death.

81.   As a result of this denial of medical attention, Plaintiff suffered damages as aforesaid.

## COUNT III
### Section 1983 - Failure to Intervene
### Against All Individual Defendants in their individual capacities

82.   The preceding paragraphs are incorporated herein by reference as though fully set forth.

83.   Each Defendant is liable for failing to intervene to prevent the constitutional violations of Barvina's federally protected rights, as claimed herein, by one or more of the other Defendants.

84.   Barvina's Constitutional rights were violated as alleged herein.

85.   Under circumstances where a named Defendant was not the violator of a given right as alleged, s/he had the duty to intervene, including the duty to intervene to prevent the Constitutional violations more fully described herein.

86.   Each of the Defendants had a reasonable opportunity to intervene.

87.   Each of the Defendants failed to intervene.

88.   As a direct and proximate result of the failure of one or more of the Defendants to intervene, Plaintiff suffered damages as more fully described herein above.

**COUNT IV**
**Section 1983 - Supervisory Liability**
**Against Defendants Sweeney, Mesiel, Donate, and**
**John/Jane Doe Supervisors #1-X in their individual capacities**

89.   The preceding paragraphs are incorporated herein by reference as though fully set forth.

90.   One or more of the Defendants acted in a supervisory capacity under circumstances, and at a time, when one or more of the subordinate Defendants violated Barvina's rights as set forth herein.

91.   In that regard, the Defendants, now known and unknown, either directed the conduct which resulted in the violation of the Barvina's federally protected rights as alleged; had actual knowledge of the subordinates violation of those

rights as alleged; had actual knowledge of the subordinates violation of such rights and acquiesced in said violations; or with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violations; and/or had a policy of maintaining no policy, where one or more policies or regulations were clearly needed; or ratified the conduct of said subordiantes.

92.    The Defendants, or one or more of them, had actual knowledge that Defendant Primecare was failing to provide constitutionally adequate medical care to inmates at the Lehigh County jail and either directed Primecare to deprive inmates of such adequate medical care; acquiesced in Primecare's failure to provide adequate medical care; failed to adequately supervise and enforce the contractual duties placed upon Primecare; and/or ratified Primecare's conduct by continuing to employ their services.

93.    As a result of the deficient supervision of the Defendants, Plaintiff suffered the damages alleged herein above.

## COUNT V
### Section 1983 - Municipal  Liability
### Against Defendant Lehigh County and the
### Individual Defendants in their official capacities

94.    The preceding paragraphs are incorporated herein by reference as though fully set forth herein.

95.    Prior to the month of February, 2013, Defendant Lehigh County developed
       and maintained policies or customs exhibiting deliberate indifference to the
       constitutional rights of persons in their custody and control, which caused
       the violation of Barvina's federally protected rights.

96.    It was the policy and/or custom of Lehigh to inadequately train, retrain  and
       supervise its staff, including the individual Defendants, as well as failing to
       properly screen prospective employees prior to hiring; thereby failing to
       adequately discourage constitutional violations on the part of its staff in
       general and the individual Defendants in particular.

97.    Defendant Lehigh County failed to adequately screen Primecare prior to
       entering into a contractual relationship with it; failed to adequately supervise
       the performance of Primecare with respect to its contractual duties; and/or
       ratified Primecare's unlawful acts and omissions by continuing to do
       business with it.

98.    Defendant Lehigh County did not adopt needed policies, which should have
       been intended and calculated to avoid the Constitutional violations referred
       to herein.

99.    As a result of the above described policies and customs and failure to adopt
       necessary and appropriate policies, staff of Defendant Lehigh County,
       including the individual Defendants, believed that their actions would not be

properly monitored by supervisory officers and that unsafe acts or misconduct would not be investigated or punished, but would be tolerated.

100. The above described policies and customs, the failure to adopt necessary and appropriate policies, and/or the ratification of the actions by employees and contractors of Lehigh County demonstrated a deliberate indifference on the part of the policymakers of the Defendant Lehigh County and were the cause of the violation of the Barvina's rights as alleged herein, and the damages which resulted therefrom.

## COUNT VI
### Section 1983 - Civil Conspiracy
### Against all Defendants

101. The preceding paragraphs are incorporated herein by reference as though fully set forth.

102. The Defendants, or one or more of them, conspired to engage in the conduct alleged herein above, whereby each Defendant acted in concert, pursuant to an agreement, to cause the stated harms or in some way facilitated the conspiratorial objective of inflicting the resulting harms upon Barvina by their own acts or omissions or by those of fellow co-conspirators.

103. As a result of the aforesaid conspiracy engaged in by Defendants, Barvina suffered the damages as more fully described herein.

## COUNT VII
### Professional Negligence
### Against Defendants Von Keil and John/Jane Doe Medical Staff #1-X

104. The preceding paragraphs are incorporated herein by reference as though fully set forth.

105. Defendants Von Keil and John/Jane Doe Medical Staff #1-X, individually and/or acting as agent, ostensible agent, apparent agent, employee or servant of the other named Defendants, or one of more of them, failed to:

    a.    Properly and timely diagnose, assess and treat Barvina when her condition worsened during the time she resided at Lehigh County Jail;

    b.    Properly respond to Barvina's inquiries and concerns regarding her deteriorating condition;

    c.    Take proper precautions and/or interventions in caring for Barvina as more fully set forth herein, amounting to negligence in the treatment of the health, safety and welfare of Barvina and her medical needs; and

    d.    Properly advise Barvina and/or her family members as to Barvina's condition upon her discharge from Lehigh County Jail.

106. The injuries to Barvina, and damages set forth herein by Plaintiff, were caused solely by, or jointly and severally with the other named Defendants,

and were the direct and proximate result of, the negligence and malpractice of Defendants Von Keil and the John/Jane Doe medical staff, individually and/or acting as an agent, ostensible agent, apparent agent, employee or servant of the other named Defendants, or acting in concert with them, in any or all of the following respects:

a.   In failing to promptly and properly render the medical care and supervisory attention the Barvina's symptoms required, the need for evaluation, analysis and treatment, and failed to insure that such services were provided and maintained in a timely manner;

b.   In disregarding, ignoring, or not sufficiently responding to Barvina's symptoms;

c.   In further aggravating Barvina's condition and/or delaying her diagnosis, care and treatment thereby causing additional pain, suffering and severe and permanent injury, by not properly diagnosing her medical condition, ultimately resulting in her death.

d.   In failing to recognize or appreciate that not responding to Barvina's complaints and condition interfered with the prompt and proper treatment of her condition thereby significantly increasing the risk of harm to Barvina;

e.   In failing to provide adequate supervision of, and communication with

and among her medical personnel, so the timely recognition of Barvina's condition, which would have been accomplished, as well as obtaining timely evaluation, analysis, care and consultation such that Barvina would not have suffered the injuries alleged herein;

f.    In failing to have her medical personnel conduct the necessary monitoring, testing and observation of Barvina's condition to appreciate her condition and to provide an impetus for more rapid diagnostic testing and analysis, evaluation, and care as she urgently needed;

g.    In failing to supervise, monitor, control or direct medical personnel, in any actions to be undertaken in the care and treatment of Barvina to preclude or impede the declining course of her health, which ultimately resulted in her death;

h.    In failing to adhere to the necessary rules, regulations, policies, and standard procedures, so that the actions, delays and omissions identified above would not have occurred; and

i.    By acting with disregard and indifference to meet the statutory and regulatory obligations imposed upon them including, *inter alia*, those governing medical professionals and health care facilities in the care, diagnosis and treatment of persons such as Barvina.

107.   As a direct and proximate result of the aforesaid acts and/or omissions of the Defendant Von Keil and John/Jane Doe medical personnel, jointly and severally, Plaintiff and Barvina, have been damaged in the following manners:

a.   Barvina suffered severe pain and mental anguish;

b.   Barvia has been deprived of income and has had her economic horizons diminished;

c.   Barvina suffered embarrassment, mental anguish, depression, psychic trauma and emotional distress; and

d.   Barvina lost her life, warranting wrongful death and survival claims as set forth herein.

## COUNT VIII
### Negligence – Vicarious and Corporate Liability
### Against Defendant Primecare

108.   The preceding paragraphs are incorporated herein by reference as though fully set forth.

109.   Defendant Primecare had direct supervision, control and responsibility for those physicians or other medical personnel or other agents or employees who administered or assisted or were present in the administration of care to Barvina while she was housed at Lehigh County Jail, and those who failed to

render such necessary care.

110. Primcare was negligent, and failed to properly supervise the physicians, staff and other medical personnel who assisted or who were present during Barvina's medical diagnosis and treatment, and/or who failed to render such obvious and necessary care.

111. As a result of the within described negligence, Primecare, physicians and other medical personnel who were present during Barvina's medical care and treatment, and whose acts or omissions committed therein, placed Barvina at great risk to her personal health and caused her to suffer great pain and suffering for an extended period of time, ultimately causing her death.

112. As detailed hereinbefore, Plaintiff believes and thus avers, that Defendant Primecare had actual knowledge of facts which would cause a reasonable professional to question continued fitness to practice medicine, prior to February 4, 2012, the day that Barvina was arrived at Lehigh County Jail.

113. During the time that Barvina was housed at Lehigh County Jail, Primecare, physicians and other medical personnel who were present during Barvina's medical care and treatment, had opportunities to intervene in the care and treatment of Barvina's condition, but failed to do so in a timely manner.

114. The ultimate death of Barvina and the damages set forth herein, was caused

by, and was the direct and proximate result of, the professional negligence and malpractice of Primecare, by and through its agents, employees or independent contractors whose services were accepted in the reasonable belief that the services were being rendered by Primecare, as more fully described herein.

115. The aforesaid acts or omissions of the said physicians and other personnel imposes upon Primecare direct liability to the Plaintiff because the acts and omissions represent breaches of the duty owed to Plaintiff and Barvina to ensure her diagnosis, care and treatment while under the control of Primecare, including, *inter alia*, the duty to select and retain only competent physicians and healthcare providers; the duty to oversee all persons who practice medicine under their control as to patient care; and the duty to formulate, adopt, and enforce adequate rules and policies to ensure quality care for patients like Barvina.

116. Primecare either knew of should have known of the aforesaid breaches, and the the conduct alleged was the expected outcome and factual cause in bringing about the harm, or in increasing the risk of harm, which occurred to Barvina.

117. As a direct and proximate result, Barvina and Plaintiff suffered damages as stated more fully herein.

## COUNT IX
### Intentional Infliction of Emotional Distress
### Against All Individual Defendants in their individual capacities and Primecare

118. The preceding paragraphs are incorporated herein by reference as though fully set forth.

119. The aforesaid extreme and outrageous conduct, and acts of the Defendants, including Defendant Primecare, acting by and through its employees, agents, and/or contractors, or one or more of them, resulted in the infliction of emotional distress, psychological trauma, and psychic pain and suffering upon Barvina prior to her death and instilled in her mind an immediate and permanent sense of fear and trepidation, and said conduct, acts or omissions surpass all bounds of decency universally recognized in a civilized society.

120. As a direct and proximate result and consequence of the aforesaid conduct, and acts of the Defendants, which constitutes intentional infliction of emotional distress, Barvina has suffered, the following:

   a.   emotional and psychological distress and trauma;

   b.   mental anguish;

   c.   psychic pain and suffering;

   d.   severe fright, horror, and grief;

   e.   shame, humiliation, and embarrassment;

   f.   severe anger, chagrin, disappointment and worry; and

g.    conduct which justifies punitive damages because of the outlandish and outrageous conduct, actions and omissions of one or more of the Defendants.

## COUNT X
### Negligent Infliction of Emotional Distress
### Against All Individual Defendants in their individual capacities and Primecare

121.  The preceding paragraphs are incorporated herein by reference as though fully set forth.

122.  The aforesaid extreme and outrageous conduct, and acts or omissions of the Defendants, including Defendant Primecare, acting by and through its employees, agents, and/or contractors, or one or more of them, resulted in the long deteriorating condition of Barvina, and ultimately her death. This tragic and needless course was observed repeatedly by Plaintiff, who took all possible steps to end her mother's suffering by begging Defendants to provide emergency medical treatment to Barvina. She was forced to watch her mother literally rot to death while Defendants failed to properly care for her, and said conduct, acts or omissions surpass all bounds of decency universally recognized in a civilized society.

123.  As a direct and proximate result and consequence of the aforesaid conduct, and acts and omissions of the Defendants, Plaintiff has suffered severe

emotional distress, which has manifested itself in numerous physical symptoms, including, *inter alia*, stress, nervousness, anxiety, and insomnia.

124. Defendants' conduct justifies punitive damages because of the outlandish and outrageous actions and omissions of one or more of them.


## COUNT XI
### Civil Conspiracy
### Against All Defendants

125. The preceding paragraphs are incorporated herein by reference as though fully set forth.

126. The Defendants conspired to engage in the tortuous state claims alleged hereinbefore whereby each Defendant acted in concert, pursuant to an agreement, to cause the stated harms or in some way facilitated the conspiratorial objective of inflicting the resulting harms upon Barvina by their own acts or omissions or by those of fellow co-conspirators.

127. As a result of the aforesaid conspiracy engaged in by the Defendants, Barvina and Plaintiff suffered the damages as aforesaid.


## COUNT XII
### Wrongful Death
### Against All Defendants

128. The preceding paragraphs are incorporated herein by reference as though

fully set forth.

129.   This action is based upon the Wrongful Death provisions of the Judiciary
       Act of July 9, 1976, P.L. 586, 42 Pa. C.S.A. §8302 and §5524.

130.   Barvina did not bring an action, and no action was brought against
       Defendants during her lifetime for the injuries which resulted in her death
       and no action for wrongful death of Barvina has been commenced against
       these Defendants on account of the grievances herein set forth.

131.   Barvina lost her life as hereinbefore set forth, and said death was as a direct
       and proximate result of the careless, negligent, reckless, willful and wanton
       conduct, acts or omissions of the Defendants, as more fully described herein.

132.   As a direct and proximate result and consequence, Barvina's estate has been
       deprived of the following:

       a.     the costs and expenses of all funeral, burial and estate administration;

       b.     the amount that will fairly and adequately compensate the family of
              Barvina for their loss of such contributions as they would have
              received after her death;

       c.     the amount that will fairly and adequately compensate Barvina's
              family for the loss of her services in the supervision, care and tutelage
              of the her surviving minor children;

       d.     the value of all sums Barvina would have contributed to her family

34

from the date of his death until the end of his life expectancy, if he had lived that long; and

e.     the value of the services, society, and comfort the Decedent would have given to his family if she had lived.

## COUNT XIII
### Survival Action
### Against All Defendants

133.   The preceding paragraphs are incorporated herein by reference as though fully set forth.

134.   This action is based on the provisions of the Judiciary Act of July 9, 1976, P.L. 586, 42 Pa.C.S.A. §8302 and §5524 and the Pennsylvania Probate Estates and Fiduciary Code, Act of June 30, 1972, P.L. 508, 20 Pa.C.S.A. §3373.

135.   Barvina did not bring an action, and no action was brought against Defendants during her lifetime, for the injuries which resulted in her death and no action for the death of Barvina has been commenced against these Defendants heretofore.   This survival action is brought on behalf of Barvina's estate.

136.   Barvina lost her life as hereinbefore set forth, and her death was as a direct and proximate result of the careless, negligent, reckless, willful and wanton

conduct, acts or omissions of the Defendants, as more fully described herein.

137.  As a direct and proximate result and consequence of the demise of Barvina, her estate has been deprived of the following:

   a.    the total net income that Barvina would have received between the date of her death and the end of her life expectancy; and

   b.    the mental and physical pain, suffering and anguish that the Decedent endured from the moment of her illness to the moment of her death.

### OTHER

138.  Plaintiff respectfully requests a jury of eight (8) jurors to deliberate upon the within cause of action.

139.  Where permitted by law, the Plaintiff demands reasonable attorney's fees, costs, interest, expenses, delay damages, compensatory damages, punitive damages and any other damages deemed appropriate by the Court.

140.  Plaintiff requests that this Honorable Court issue declaratory and injunctive relief, as appropriate, declaring the within described practices to be unlawful, and enjoining their present and continued effects.


WHEREFORE, Plaintiff respectfully requests that this Honorable Court, for each Count alleged:

a.    Award compensatory damages to Plaintiff against the Defendants, jointly and severally, in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00) exclusive of interest and costs;

b.    Award punitive damages to Plaintiff against the individual Defendants in their individual capacities, and Primecare jointly and severally;

c.    Award delay damages;

d.    Award reasonable attorney's fees and costs to the Plaintiff as allowed by law; and

e.    Award such other and further relief as this Court may deem appropriate.


Respectfully submitted,
LAUER & FULMER, P.C.

Date: February 3, 2015          By:     /s/ Philip D. Lauer
                                        Philip D. Lauer, Esquire
                                        I.D. # PA 07935
                                        phil@lauerlaw.net
                                        Joseph E. Welsh, Esquire
                                        I.D. # IL 3128295
                                        (*pro hac vice* petition to be filed)
                                        joe@lauerlaw.net
                                        701 Washington Street
                                        Easton PA  18042
                                        610.258.5329
                                        Fax: 610.258.0155

37